UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RONALD HOLT,

       Petitioner,

v.                             Civil Action No. 2:15cv529

UNITED STATES PAROLE COMMISSION
and
ERIC WILSON, WARDEN,

       Respondents.

## REPORT AND RECOMMENDATION

Petitioner Ronald Holt ("Holt") seeks a writ of habeas corpus under 28 U.S.C. § 2241, alleging constitutional error in the execution of his sentence. Specifically, he raises an Ex Post Facto and due process challenge to the United States Parole Commission's decision to deny him parole. (ECF No. 1). Respondents filed a responsive pleading that, while not styled as a motion to dismiss, sought dismissal of Holt's claims. (ECF No. 8). The matter was referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the undersigned recommends that the district court GRANT Respondents' Motion (ECF No. 8) and DISMISS the petition.

1

## I.   STATEMENT OF THE CASE

Holt is a federal inmate serving an aggregated 89-year U.S. Code and D.C. Code sentence following convictions for two separate acts involving kidnapping, robbery, and rape while armed committed in 1984 (collectively "1984 crimes").  He was first sentenced to 35 years in prison by the U.S. District Court for the District of Maryland on February 4, 1985, for rape while armed and unauthorized possession of a firearm ("U.S. Code violation").  That crime occurred on June 6, 1984.  He was then sentenced to an 18 to 54-year sentence in the D.C. Superior Court for kidnapping while armed, armed robbery, and rape while armed ("D.C. Code violation").  That incident occurred on August 20, 1984.  Holt was also already on parole from a 5 to 20-year sentence imposed in 1970 by the D.C. Superior Court for first degree burglary, assault with intent to commit rape, and sodomy when the 1984 crimes were committed.[1]  Both sentences for the 1984 crimes were parole eligible, and the Federal Bureau of Prisons aggregated the sentences into an 89-year term with a parole eligibility date of August 4, 1997.

Holt's initial parole hearing for his U.S. Code violation was held on April 10, 1997.  (ECF No. 1, at 24).  The U.S. Parole Commission ("U.S.P.C." or "Commission") determined that

---

[1] Holt was paroled from the 1970 conviction on December 5, 1980, and was to remain on parole until October 17, 1989.

2

Holt's offense behavior was a category 7 and his Salient Factor Score ("SFS") was a 4, which produced a guideline range of 78 to 110 months.   Id.   This was the amount of time to be served "before release for cases with good institutional adjustment and program achievement."   Id.   However, the Commission determined that Holt's case warranted a decision above the guidelines because he was "a more serious risk" than indicated by the statutory factors, taking into consideration the nature of his criminal history and the factual circumstances of his U.S. Code violation.   Id.   The Commission ultimately decided that Holt should serve 280 months of his federal sentence before he would be considered for parole from the D.C. Code violation.   Id.   The initial parole hearing for his D.C. Code violation was scheduled for April 2007.   Id.   Holt received interim hearings in 1999, 2001, 2003, and 2005 - but none made any change to the Commission's 1997 decision.   See (ECF No. 1, at 35, 37-39).

The initial hearing for Holt's D.C. Code violation did not occur until February 11, 2008.  (ECF No. 1, at 50).   At the hearing, and after applying the 1987 D.C. Board of Parole guidelines ("1987 Board Guidelines"), the Commission determined Holt's Grid Point Score to be a 2, which would normally result in release with the highest level of supervision.[2]  (ECF No. 1,

---

[2] The D.C. Board of Parole jurisdiction was abrogated by the U.S. Parole Commission pursuant to the National Capital Revitalization Act

at 48); D.C. Mun. Regs. tit. 28, § 204.19 (1987), as applied by 28 C.F.R. § 2.80(o). However, the Commission decided that a departure from the guidelines was warranted because Holt was considered a "very high risk case for re-offending." (ECF No. 1, at 48). The Examiner who conducted the hearing noted that Holt had been certified as a "sexually dangerous person" pursuant to 18 U.S.C. § 4248(a)[3] and referred to Holt as a "Serial Rapist." (ECF No. 1, at 52). As a result, the Examiner concluded that parole should be denied, stating "[t]he risk to the community is too great. Time and age does not necessarily take care of the mental disturbances that drive one to commit crimes like this man has committed." Id.

Holt's next parole hearing was held on April 26, 2012. (ECF No. 1, at 56). The Commission continued to apply the 1987 Board Guidelines and determined Holt's Grid Point Score was now

of 1997. See Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745, codified at D.C. Code Ann. § 24-131 (West 2001). However, the Commission can still apply the D.C. Board of Parole's guidelines to offenses committed before August 5, 1998. See 28 C.F.R. § 2.80(o), (p). Whether the 1987 or 1972 D.C. Board of Parole guidelines apply is typically determined by the offense date. See id. Holt contends that because he committed his crimes in 1984 – before the 1987 Guidelines were in effect - the 1972 Guidelines should have been applied at his parole hearings. As discussed in further detail below, however, the Commission applied the 1987 Guidelines in Holt's case pursuant to 28 C.F.R. § 2.65(e).
[3] Holt's certification as a "sexually dangerous person" was apparently withdrawn in response to a motion filed by the U.S. Attorney's office on May 7, 2009. (ECF No. 1, at 78-79). Given the other reasons stated, there is no indication how central this certification was to the decision to deny Holt parole at the 2008 hearing. However, U.S. v. Comstock, 560 U.S. 126 (2010), upheld the constitutionality of U.S.C. § 4248(a) and Holt does not argue that reliance on this certification violated his constitutional rights.

a 1, which would normally result in a grant of parole. Id. The Commission, however, decided to depart from the guidelines again citing the "reasonable probability that [Holt] would not obey the law if released" and that his release would "endanger the public safety." Id. The Examiner noted that Holt had made positive adjustments in prison, including his long-standing participation in the Prison Industry System. Id. But the Commission also stated that Holt "[has] not completed programs that the Commission believes reduces the risk that [Holt] will re-offend in a similar manner." Id. As a result, the Commission denied parole, and recommended that Holt participate in and complete a sex-offender treatment program. Id.

By Holt's next parole hearing in February 2015, he had completed the Bureau of Prison's sex-offender treatment program and his grid score was now a 0 – the lowest possible grid score a prisoner can achieve. (ECF No. 1, at 65). The Commission decided again to depart from the guidelines and deny parole, citing Holt's probability of recidivism and danger to the public. Id. In recommending that parole be denied, the Examiner provided a reason that had never been offered at any of Holt's previous hearings. Specifically, the Examiner stated that "[d]espite the fact that your Grid score is 0 and you recently completed the sex offender treatment program at FMC Devens, parole is being denied because of the unusual cruelty to

the victims. . . ."  (ECF No. 1, at 74).  The Examiner did not highlight any particular facts that led to this conclusion or give any reason for invoking it for the first time in Holt's parole history.  The Examiner also added that, given Holt's criminal history, "I believe he should remain in prison. I do not believe he will remain crime-free if released. . . ."  Id.

Holt filed his federal petition for habeas relief on December 4, 2015, under 28 U.S.C. § 2241.  (ECF No. 1).  In the petition and subsequent pleadings, Holt asserts several redundant challenges to the Commission's denials of parole.[4]  For the purposes of this review, Holt's arguments present two distinct claims for habeas relief.  See, e.g., Jackson v. U.S. Parole Com'n, No. 2:07CV503, 2009 WL 122592 *1 (E.D. Va. Jan. 16, 2009) (considering Ex Post Facto claim under Section 2241); Allen v. O'Brien, No. 1:14-cv-02545, 2015 WL 4621453 *1 (S.D. W. Va. June 22, 2015) (aggregating due process claims brought under Section 2241).  First, Holt argues that the Commission's application of the 1987 Board Guidelines violated the Ex Post Facto Clause of the U.S. Constitution.  Specifically, Holt

---

[4] Holt's pleadings as a whole make the following arguments: (1) That application of the 1987 Board Guidelines constitutes an Ex Post Facto violation; (2) that he has protected liberty interests that have been violated by denial of parole for arbitrary and capricious reasons and through application of the incorrect guidelines; (3) that the Commission abused its discretion by failing to consider favorable information; and (4) that the Commission's decisions were generally arbitrary, capricious, and an abuse of discretion.  See (ECF Nos. 1, 9).

contends that the Commission should have applied the 1972 Board Guidelines and failure to do so resulted in a longer prison sentence. Second, Holt claims that the Commission's denial of parole violated his rights under the Due Process Clause of the Fifth Amendment. Holt argues that the decisions to deny his parole were arbitrary, capricious, and biased and failed to consider all the relevant information.

Respondents filed a motion to dismiss, although it was not styled as such and included no Notice in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1985), and Local Rule 7(K). (ECF No. 8). Before Holt was notified of his right to respond to the Respondents' motion he filed a Reply. (ECF No. 9). After notification pursuant to Roseboro, he filed a Supplemental Reply. (ECF No. 11). The court also ordered the parties to file supplemental briefing on issues raised in Holt's pleadings that were not addressed in the Respondents' briefs. (ECF No. 12). Having reviewed the record and the pleadings, the undersigned recommends the district court make the following findings of fact and conclusions of law.

## II.  RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

A prisoner seeking habeas corpus relief under Section 2241 must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). But Holt has failed to state a claim that

7

would entitle him to relief. His Ex Post Facto claim fails because the U.S.P.C. guidelines in question are not considered "laws" in the Fourth Circuit. Moreover, Holt has failed to plead facts that plausibly show how application of the 1987 Board Guidelines subjected him to a longer period of incarceration than he would have faced under application of the 1972 Board Guidelines. Additionally, Holt's due process claim that the Commission's previous denials of parole were "arbitrary, capricious, and biased," exceeds the scope of this court's judicial power of review, and is not otherwise plausibly alleged by the facts. Accordingly, Holt has failed to state a claim under any of his theories of relief and the undersigned recommends that the district court DISMISS Holt's petition.

**A.  The Commission's Application of the 1987 Board Guidelines did not violate the Ex Post Facto Clause of the U.S. Constitution.**

One function of the Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3, is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission. See Garner v. Jones, 529 U.S. 244, 249-50 (2000) (citing Collins v. Youngblood, 497 U.S. 37, 42 (1990) (citations omitted)). "Retroactive changes in law governing parole of prisoners, in some instances, may be violative of this precept." Id. at 250. But not every procedural change that creates the risk of affecting a prisoner's terms or conditions of

incarceration is prohibited.  Id. (citing California Dep't. of Corrections v. Morales, 514 U.S. 499, 508-09 (1995)).  The question is "a matter of 'degree.'"  Morales, 514 U.S. at 509. The controlling inquiry in determining whether there has been an Ex Post Facto violation is whether the newly enacted law creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes."  Garner, 529 U.S. at 250 (citing Morales, 514 U.S. at 509).

This standard, however, assumes that the enactment in question is in fact a "law."  And whether the U.S.P.C. Guidelines – and by extension application of the former D.C. Board of Parole Guidelines – constitute "laws" for the purposes of an Ex Post Facto challenge has not been decided by the Fourth Circuit.  See McKissick v. U.S. Parole Com'n, 295 F. Supp. 2d 643, 647 (S.D. W. Va. 2003).  But, while the Court of Appeals in this circuit has not squarely addressed the issue, trial courts in this district and a majority of the other circuits have concluded that the U.S.P.C. Guidelines are not "laws" that fall under the purview of the Ex Post Facto Clause.  See Jackson, 2009 WL 122592 at *3 (citing Dufresne v. Baer, 744 F.2d 1543, 1549-50 (11th Cir. 1984)); McKissick, 295 F. Supp. 2d at 647

(collecting cases from second, sixth, seventh, ninth, and eleventh circuits).[5]

Again, the U.S.P.C. was granted sole jurisdiction over parole considerations for D.C. Code violators, such as Holt. See D.C. Code Ann. § 24-131 (West 2001). While the U.S.P.C. Guidelines still apply the D.C. Board Guidelines in certain cases, including Holt's, the decision to use them is not an application of a "law" for the purposes of an Ex Post Facto analysis. As a result, the Commission's use of the 1987 Board Guidelines at Holt's parole hearings, instead of the 1972 Board Guidelines does not give rise to an Ex Post Facto claim.

However, assuming – arguendo – that the Commission's application of the 1987 Board Guidelines could serve as the basis for an Ex Post Facto violation, Holt has still failed to state facts that plausibly allege a claim for relief. The

---

[5] It is worth noting that the circuit court cases relied on by McKissick and Jackson all pre-date the Supreme Court's Decision in Garner. In Garner, the Court considered whether retroactive application of a Georgia State Board of Pardons Rule that allowed for discretionary modification of the time between parole hearings violated the Ex Post Facto Clause. 529 U.S. at 246-48. The Court held that the rule may violate the Ex Post Facto Clause and enunciated the standard to apply to retroactive parole guidelines, but ultimately concluded that the factual record was not sufficient to apply the test in that instance and remanded the case. Id. at 257. Both McKissick and Jackson fail to address what impact, if any, Garner has on the issue. And Garner seems to contradict the conclusion that parole guidelines are not "laws" because they are not legislative enactments. Id. at 251 (applying Ex Post Facto analysis to Georgia State Board of Pardons Rule 475-3-.05(2)); see also id. at 257 (Scalia, J., concurring in part) ("I would agree with the Court's opinion if we were faced with an amendment. . .prescribed by the Georgia Legislature.").

operative question is whether such retroactive application "creates a significant risk of prolonging [Holt's] incarceration." Garner, 529 U.S. at 251. Aside from conclusory statements that he has been subjected to a longer period of incarceration, Holt offers little factual support for his claim.

The facts Holt does allege - namely that the 1972 Board Guidelines placed a larger emphasis on institutional performance and that the 1987 Board Guidelines put a greater emphasis on public safety - are contradicted by a comparison of the two Guidelines. While the 1987 Board Guidelines did implement a completely new point system where institutional performance is one of several factors used to reach the prisoner's "Grid Point Score," the 1972 Board Guidelines also listed institutional performance as one of several factors without assigning any particular weight to it. Compare 28 C.F.R. § 2.80(o)(4) with 28 C.F.R. § 2.80(p)(v). More importantly, both Guidelines granted the board wide discretion to deny parole where they believed that the prisoner would re-offend or pose a danger to the community. See D.C. Mun. Regs. tit. 28, § 204.22 (1987); D.C. Mun. Regs. tit. 9, § 105 (1972).

Accordingly, even if the court were to assess Holt's claims under the Ex Post Facto Clause, he has failed to allege facts which plausibly show that application of the 1987 Board

11

Guidelines created a significant risk of prolonged incarceration.

**B.   The Commission's Denial of Parole did not violate the Due Process Clause of the U.S. Constitution.**

Prisoners possess no federal constitutional liberty interest in parole. Swarthout v. Cooke, 562 U.S. 216, 220 (2011) ("There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners."). Many courts also agree that the D.C. parole system does not create a constitutionally protected liberty interest in parole. See, e.g., Blair-Bey v. Quick, 151 F.3d 1036, 1047 (D.C. Cir. 1998). Without a constitutionally cognizable liberty interest, petitioners cannot pursue a procedural due process challenge to U.S.P.C. decisions. See Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013) ("To succeed on a procedural due process claim, a plaintiff must . . . demonstrate that he had a constitutionally cognizable life, liberty, or property interest."); see also Allen v. O'Brien, No. 1:14-cv-02545, 2015 WL 4621453 *1, *9 (S.D. W. Va. June 22, 2015). But the absence of a liberty interest in parole does not necessarily foreclose a substantive due process challenge to U.S.P.C. decisions. See Allen, 2015 WL 4621453 at *9.

12

Assuming, without deciding, that Holt can raise a substantive due process challenge to the U.S.P.C.'s decision, the scope of judicial review is narrow. Indeed, the U.S.P.C.'s vast discretion in granting or denying parole prevents federal courts from reviewing those decisions on the merits. See Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981). In Garcia, the Fourth Circuit held that the U.S.P.C.'s discretion limits a court's review to whether its decision "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations." Id. In that case, the court was reviewing a U.S.P.C. decision made under 18 U.S.C. § 4218(d) concerning parole from a U.S. Code violation. Id. Although this case concerns parole from a D.C. Code violation, the U.S.P.C. is granted the same type of broad discretion over parole decisions for D.C. offenders. See D.C. Code § 24-404(a). Beyond this narrow review identified in Garcia, courts in this circuit have rejected the availability of an "abuse of discretion" or "arbitrary and capricious" review over the merits of parole decisions. See, e.g., Allen, 2015 WL 4621453 at *10 (rejecting abuse of discretion standard); Al-Ami'n v. Clarke, No. 2:13cv167, 2014 WL 549326 *1, *4 (E.D. Va. Feb. 11, 2014) (rejecting arbitrary and capricious standard). Therefore, Holt's only viable due process challenge would require him to show that the U.S.P.C. "exceeded its legal authority, acted

13

unconstitutionally, or failed to follow its own regulations" by denying him parole.

In this case, Holt has not alleged facts sufficient to show that the U.S.P.C. violated the standard established by Garcia. Specifically, he has alleged that the U.S.P.C. violated its own regulations by applying the 1987 Board Guidelines instead of the 1972 Board Guidelines. And indeed, the U.S.P.C. regulations do establish that it "may" apply the D.C. Board of Parole guidelines that were in effect at the time the prospective parolee committed the offense of conviction. See 28 C.F.R. §§ 2.80(o),(p). Under those regulations, the 1972 Board Guidelines could apply to Holt's case because his D.C. Code violation was committed "on or before March 3, 1985." Id. at 2.80(p)(2)(i). However, Holt overlooks the applicable regulation that led the U.S.P.C. to apply the 1987 Board Guidelines in his case.

In the case of inmates with combined U.S. and D.C. Code violations, like Holt, the regulations require the Commission to apply the "point score system of the D.C. Board of Parole. . . to determine the prisoner's suitability for release on parole." 28 C.F.R. § 2.65(e). The "point score system" referred to in the regulation was not established until the enactment of the 1987 Board Guidelines. See D.C. Mun. Regs. tit. 28, § 204.22 (1987). Thus, the mandate to apply the point score system would necessarily preclude the application of the 1972 Board

14

Guidelines, which featured only a list of six non-exhaustive factors to guide the D.C. Board of Parole's exercise of discretion. See D.C. Mun. Regs. tit. 9, § 105 (1972). Further, the U.S.P.C. regulations also dictate that when the 1987 Board Guidelines are applied at the initial parole hearing – as was done in Holt's case – the Commission should continue to apply those guidelines at subsequent hearings. See 28 C.F.R. § 2.80(a)(4), (p)(7). Therefore, despite Holt's claims, the Commission did not violate its own regulations by applying the 1987 Board Guidelines.

Finally, Holt also argues that the U.S.P.C.'s decisions were "arbitrary, capricious, and biased," citing the fact that he was still denied parole after completing institutional programming recommended by the Commission, and its use of evolving justifications to deny him parole. Again, the court's ability to review the U.S.P.C. decisions under an "arbitrary and capricious" standard is foreclosed by Garcia. See Allen, 2015 WL 4621453 at *12 (citing Al-Ami'n, 2014 WL 549326 at *4). The court has no authority to examine the merits of the Commission's decision. See Garcia, 660 F.2d at 988. Nonetheless, the record indicates that the Commission complied with its own regulations and was within its discretion to deny parole, despite the completion of recommended programming or for reasons not mentioned in previous parole hearings. In addition, though Holt

15

makes conclusory claims of "bias," he has not identified any statement, document, or practice which would support a claim of constitutional dimensions.

With respect to institutional programming, there is no mandate that the Commission grant parole on the basis that a prisoner has completed recommended programming. See Bogan v. Dist. Of Columbia Bd. Of Parole, 749 A.2d 127, 129 (D.C. 2000) (rejecting argument that prisoner was entitled to parole because he completed all required programing). Completion of institutional programming is just one of many factors that the Commission can take into account when exercising its vast discretion. See 28 C.F.R. § 2.80(o).

Finally, the Examiner's use of "unusual cruelty" for the first time to deny parole in 2015 did not violate the 1987 Board Guidelines. Specifically, the Examiner stated that "[d]espite the fact that your Grid score is 0 and you recently completed the sex offender treatment program at FMC Devens, parole is being denied because of the unusual cruelty to the victims. . . ." (ECF No. 1, at 74). Although "unusual cruelty" was not explicitly stated as a reason for denying parole at Holt's prior hearings, the 1987 Board Guidelines do not indicate that the failure to explicitly identify "unusual cruelty" at the initial parole hearing forecloses its use at subsequent hearings. See D.C. Mun. Regs. tit. 28, § 204.22 (1987); D.C. Parole Board,

Policy Guideline 3 (Oct. 23, 1995) (allowing for a finding of "unusual cruelty" where the crime involved "physical, mental, or emotional abuse beyond the degree needed to sustain a conviction on the instant offense."). Moreover, "unusual cruelty" was not the sole factor for denying Holt's parole at the 2015 hearing. The Commission also cited ". . . .prior failure under community supervision and [Holt's] history of committing repetitive sex offenses while on parole supervision." (ECF No. 1, at 74). Both of these additional factors – which were also cited in Holt's previous parole hearings – comply with the enumerated reasons the Commission may depart from the guidelines and deny parole. See D.C. Mun. Regs. tit. 28, § 204.22 (1987). Therefore, contrary to Holt's claims, the record indicates that the Commission applied its regulations correctly, and properly exercised its discretion to deny parole.

Accordingly, because Holt has failed to allege facts that indicate the Commission "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations," he has failed to state a claim that the U.S.P.C. violated his due process rights in denying him parole. See Garcia, 660 F.2d at 988.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Respondents' Motion to Dismiss (ECF No. 8) be GRANTED and Holt's Petition (ECF No. 1) DISMISSED.

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk any written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a _de novo_ determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of right to appeal from a judgment

18

of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

November 21, 2016

### Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Ronald Holt, #21941-037
Federal Correctional Complex
1060 River Road
P.O. Box 1000
Petersburg, Virginia 23804

Virginia Van Valkenberg
Assistant United States Attorney
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By _____
    Deputy Clerk

November 21          , 2016